# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

MARVIN L. COOMER,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Civil Action 2:16-cv-1132
Judge Michael H. Watson
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff, Marvin L. Coomer ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 24), and the administrative record (ECF No. 10). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

Plaintiff protectively filed his application for supplemental security income on July 15, 2013, alleging that he has been disabled since July 15, 2013, due to a nerve condition in his shoulder, back, and feet. On August 27, 2015, following initial administrative denials of Plaintiff's application, a hearing was held before Administrative Law Judge Thomas Wang (the "ALJ"). (*Id.* at PAGEID# 76-93).

Plaintiff, represented by counsel, appeared and testified at the hearing. Plaintiff testified that various physical activities caused pain in his back after he performed them for a period of time. He mentioned "tree work," vacuuming, doing dishes, sitting, taking out the trash, and kneeling, in particular. (*Id.* at PAGEID# 81-82). Plaintiff also testified that he had received injections for neck pain and that the injections had relieved the pain for periods from three or four days to a month. (*Id.* at PAGEID# 83). More recently, Plaintiff testified, a procedure to alleviate the pain in his neck had been completely successful at least to the date of the hearing. (*Id.*). Plaintiff testified that as of the date of the hearing his shoulders were pain free. (*Id.*).

Vocational Expert Carl Hartung (the "VE") also testified at the administrative hearing. (*Id.* at PAGEID# 88-91). The VE observed that Plaintiff had no past relevant work. (*Id.* at PAGEID# 90). The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (*Id.* at PAGEID #at 141-44). Based on the medium-work RFC ultimately determined by the ALJ, the VE testified that the hypothetical individual could perform approximately 1,100 jobs in the regional economy. Those jobs included sexton, kitchen helper, and laboratory equipment cleaner. (*Id.* at PAGEID #89). A second hypothetical with the same limitations but with light, rather than medium, work yielded a response of approximately 3,000 jobs in the regional economy. (*Id.* at PAGEID #89-90). Added limitations of being off task up to 10% of the work day, four additional 15-minute breaks per day, two days' absence per month, and frequent supervision were all work-preclusive in the VE's opinion. (*Id.* at PAGEID #90-91).

On September 9, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PAGEID# 60-69). At step one of the

sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity during the period from his application date of July 15, 2013. (*Id.* at PAGEID# 62). At step two, the ALJ found that, through the application date, Plaintiff had the severe impairments of cervical degenerative disc disease with arthropathy and lumbar degenerative disc disease with spondylosis. The ALJ noted that Plaintiff had also been diagnosed with obesity and Hepatitis C, but the ALJ considered these to be non-severe impairments because they were minimally symptomatic and created minimal functional limitations. (*Id.* at PAGEID #62). The ALJ further concluded that Plaintiff did not have a medically determinable mental impairment. (*Id.*).

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments as described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at PAGEID #63). The ALJ then set out his finding with respect to Plaintiff's RFC: "the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can never

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
> 2. Does the claimant suffer from one or more severe impairments?
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

climb ladders, ropes, or scaffolds. He can frequently stoop, kneel, and crawl." (*Id.*).

In arriving at that RFC, the ALJ considered all symptoms expressed by Plaintiff in light of the objective medical evidence and other evidence in the record, including opinion evidence. He first observed that Plaintiff had alleged that he suffered from disabling lower back and cervical spine pain. (*Id.* at PAGEID #64). The ALJ found that the relevant evidence supported a finding that Plaintiff had "an underlying medically determinable impairment that could reasonably cause some symptomology." Specifically, the ALJ noted that x-ray studies of Plaintiff's cervical and lumbar spines detected degenerative changes associated with neural foraminal narrowing secondary to arthropathy. (*Id.* at PAGEID #65). The ALJ concluded, however, that the record did not include "sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by" Plaintiff. (*Id.*).

The ALJ identified substantial evidence from the record indicating that Plaintiff maintained normal gait and movement and that he had been able to alleviate his pain through treatment and medication so that "his overall functioning has in fact been stable and intact." (*Id.* at PAGEID #66). The ALJ found, specifically, that Plaintiff's allegations of intense, debilitating pain were "not fully credible" in light of his activities and the objective medical evidence. (*Id.*). The ALJ gave little weight to the opinion of Plaintiff's treating nurse practitioner with respect to Plaintiff's inability to work due to lumbar pain because her own treatment notes consistently indicated normal musculoskeletal examinations. (*Id.*). He disregarded the nurse practitioner's opinion that Plaintiff was disabled by bipolar disorder because none of the acceptable medical authorities had diagnosed Plaintiff with that disorder. (*Id.*). Finally, the ALJ gave no weight to the opinion of Plaintiff's pain specialist that Plaintiff was unable to work because the doctor did not support that opinion with acceptable medical

4

evidence. (*Id.*).

Relying on the VE's testimony and Plaintiff's age, education, and work experience, the ALJ concluded that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (*Id.* at PAGEID# 68). He therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*).

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)), *cert. denied sub. nom. Paper, Allied-Indus., Chem.& Energy Workers Int'l Union v. TNS, Inc.* 537 U.S. 1106 (2003). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109

F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III. ANALYSIS

In his Statement of Errors, Plaintiff first challenges the ALJ's failure to "mention to any degree the cervical spine MRI in the claim file, which indicated *severe* right foraminal narrowing at C3-C4 secondary to a combination of uncovertebral arthropathy and *severe* right facet joint arthropathy. . ." in arriving at his conclusion regarding the Plaintiff's RFC. (ECF No. 17 at PAGEID #525). Plaintiff also contends that the record does not support that ALJ's RFC as opposed to a more restrictive RFC as claimed by Plaintiff. *(Id.* at PAGEID #526). The undersigned considers these contentions of error in turn.

#### A. The Cervical Spine MRI

According to Plaintiff, the ALJ did not consider the results of a July 2014 MRI of Plaintiff's cervical spine. Plaintiff argues that the ALJ's failure is significant because the MRI result supports Plaintiff's reports of severe pain in a way that other objective medical evidence upon which the ALJ relied does not. Plaintiff bases that argument on the fact that the MRI indicated severe foraminal narrowing and severe joint arthropathy while the other evidence suggested only mild findings.

This argument fails to persuade for two reasons. First, contrary to Plaintiff's contention, the ALJ did cite the MRI results in his decision. (*See* ECF No. 10 at PAGEID #65). Second, even had the ALJ failed to consider the MRI results specifically, he considered a number of other

6

sources of medical evidence and concluded that Plaintiff's "cervical and lumbar degenerative disc disease are severe." (*Id.* at PAGEID #67). Accordingly, the ALJ 's finding with respect to the severity of Plaintiff's cervical spine disease is not undermined by his failure to give greater consideration to the MRI results.

Still, the ALJ concluded that Plaintiff's complaints of disabling pain were not consistent with the medical evidence. That conclusion is the basis for Plaintiff's second contention of error.

### B. Evidence in Support of the RFC

Plaintiff's second contention of error is that the ALJ erred in his conclusion with respect to his RFC assessment. That contention likewise lacks merit. According to Plaintiff, the ALJ erred in basing his RFC on the combination of physical examination findings, the fact that Plaintiff did not require surgery for his spinal conditions, the positive effects of treatment Plaintiff received, and Plaintiff's activities of everyday living.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations

7

omitted).

In weighing subjective complaints, the ALJ is required to evaluate the Plaintiff's credibility, and the ALJ's credibility determination is entitled to deference "because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). However, [i]f the ALJ rejects the claimant's complaints as incredible, he must clearly state his reason for doing so." *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp. 2d 954, 958 (N.D. Ohio 2003) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)). The ALJ must consider evidence in the record as a whole, including subjective complaints, objective findings, and information obtained from treating physicians. *See* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *5 (July 2, 1996).[1]

Furthermore, an ALJ is required to explain how the evidence supports the limitations that he set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the

---

[1]SSR 16-3p, which became effective March 28, 2016, superseded and rescinded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1119029, at *1. Because SSR 16-3p does not include explicit language to the contrary, it is not to be applied retroactively. *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Combs v. Comm'r of Soc. Sec*., 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations."); *Cruse v. Comm'r of Soc. Sec*., 502 F.3d 532, 541–42 (6th Cir. 2007) (declining to retroactively apply a newly effective Social Security Ruling in the absence of language reflecting the Administration's intent to apply it retroactively).

case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96–7p; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted).

The record before the ALJ supported the conclusion that Plaintiff had severe cervical and lumbar spine disease. The question, then, was whether the symptoms of that disease were sufficiently severe to be disabling. Plaintiff alleged that they were and that the objective medical evidence, especially the findings of the July 2014 MRI of his cervical spine, supported his allegation of debilitating pain. The ALJ thoroughly articulated his basis for concluding that Plaintiff's complaints of disabling pain and the severity of some of the medical findings were not consistent with other evidence in the record that reflected on Plaintiff's ability to function normally with only certain specific limitations. Specifically, the ALJ set out the following bases for his conclusions:

> In spite of his reportedly debilitating pain, the claimant has reported that he is able to take out the trash, help around the house with chores, including running the sweeper, cooking, and shopping for groceries. He reported that he is able to drive a car, use public transportation, sit and watch television, and talk with the neighbors . . . . This evidence indicates that he is not as functionally limited as he has alleged. Further, as was noted in the review of evidence above, his doctor observed that his

9

> report of pain was inconsistent with his demeanor in the office, as he reported 10/10 pain yet was laughing, smiling, and able to speak in complete sentences, which further suggests that his subjective reports of pain and functional limitation are not fully credible. His testimony was not persuasive to establish an inability to perform the range of work activity described in the findings in this decision, which is supported by the normal physical examinations, the generally mild diagnostic findings, and the reports that he received between 80 and 90% pain relief with treatment.
>
> The finding in this decision accommodates his cervical pain by precluding him from climbing ladders, ropes, or scaffolds. His lumbar pain is accommodated by limiting him to frequent stooping, kneeling, and crawling. A more restrictive finding is not supported by the medical record or the opinion evidence.

(ECF No. 10 at PAGEID #67).

The ALJ based his conclusions on the factors identified in the relevant authorities, and he set out the bases for his conclusions in an appropriate and thorough narrative discussion. Moreover, the ALJ identified substantial evidence in the record in support of his conclusions. This Court may not, therefore, disturb his conclusions even though that Court recognizes that some of the objective medical evidence may have supported an opposite conclusion. *See Blakely*, 581 F.3d at 406. In sum, because substantial evidence in the record supports the ALJ's conclusion that Plaintiff was not disabled as of the application date, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED**.

### IV. DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

### V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen

(14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE